## CONTINUATION IN SUPPORT OF AN APPLICATION FOR SEARCH WARRANT

1.  I, Thomas Schifini, am a Special Agent (SA) with U.S. Homeland Security Investigations (HSI), with twenty-eight (28) years of experience as a federal agent, duly appointed according to law and acting as such. I am assigned to the Grand Rapids field office. As part of my duties, I conduct criminal investigations relating to violations of the laws of the United States. I have successfully completed the U.S. Border Patrol/FLETC Academy in Charleston, South Carolina. I possess a bachelor's degree in criminal justice from John Jay College of Criminal Justice with a minor in Police Operations and Management and a Juris Doctor from the University of Akron School of Law with a specialization in Criminal Law.  As a Special Agent, I have received training and experience relating to Federal Criminal Procedures, Federal Statutes, and HSI Regulations.  I have received training and instruction in conducting investigations into complex criminal conspiracies.

2.  This continuation is made in support of an application for a warrant to search the contents of the Samsung cellular telephone (the **Subject Cellphone**), which was seized from Norma AYALA on September 30, 2025.  The **Subject Cellphone** is more particularly described in Attachment A of this continuation.

3.  Because this continuation is being submitted for the limited purpose of establishing probable cause, I have not included every detail of every aspect of the investigation.  Rather, I have set forth only those facts necessary to establish probable cause to search the item listed in Attachment A.  Unless specifically indicated, all conversations and statements described in this continuation are related in substance and in part.

4.  As a result of the instant investigation described more fully below, there is probable cause to believe that evidence, contraband, and fruits of, and other items related to the conspiracy

to transfer false United States identification documents, in violation of Title 18 U.S.C. §1028(f), and transferring false United States identification documents, in violation of Title 18 U.S.C. §1028(a)(2), are present on the item described in Attachment A.

5.  The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offenses being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## SUMMARY OF INVESTIGATION

6.  In March of 2024, HSI Grand Rapids received information regarding a West-Michigan based fraudulent document ring. The information indicated that a Hispanic female, who was identified as 'Norma', takes the orders for sets of fraudulent identification documents. 'Norma' then contacts an unidentified Guatemalan male, who also resides in the Grand Rapids area. That unidentified male manufactures the documents, which are provided to 'Norma'. 'Norma' then collects $350.00 for each set from the buyers. 'Norma' could be contacted at (616) 490-5447 (the **Subject Cellphone**). HSI Grand Rapids initiated an investigation in order to attempt to corroborate this information.

7.  On March 23, 2024, I was able to locate a Facebook page associated with 'Norma'. The Facebook page, which was open for public perusal, indicated that she lived in Wyoming, Michigan. There were multiple self-pictures exhibited on this Facebook account, which was under the username of Norma AYALA. I forwarded one of these pictures to the original Source of Information (SOI), who confirmed that this was the same person selling fraudulent identification documents.

8.  On May 23, 2024, I processed the name Norma AYALA and search-term

'Wyoming, Michigan' through various investigative databases available to HSI. One database showed a potential match of Norma Yanari AYALA, who resided at 2438 Wyoming Avenue SW in Wyoming, Michigan as of January of 2023.

9. I then processed the name of Norma Yanari AYALA through other investigative databases. One database associated this information with Norma AYALA (dob: xx-xx-1991). AYALA, a native and citizen of Guatemala, was issued alien number Axxx xxx 225 and FBI number 286854CE2 after being deported back to Guatemala on four (4) separate occasions. On May 23, 2024, I queried these additional identifiers through the EAGLE processing database. The EAGLE database contained multiple facial images of AYALA taken from her deportations from 2014 through 2018. Those images appear to match the images of AYALA found on her Facebook page.

A. **Controlled Purchases from Norma AYALA**

10. HSI Grand Rapids conducted four (4) separate controlled purchases of fraudulent documents from Norma AYALA. The transactions occurred in the same manner and general location within Kent County, Michigan. A Confidential Informant (CI) would contact AYALA via WhatsApp or directly at the **Subject Cellphone**. The CI would then send a photographic image and fictitious biographical data to AYALA at the **Subject Cellphone**, which I previously supplied to the CI. The CI would then meet with AYALA to exchange HSI funds for the fraudulent documents.

11. On June 6, 2024, HSI Grand Rapids purchased the first set of fraudulent documents from AYALA, with the assistance of a HSI CI. The CI ordered the documents by contacting AYALA at the **Subject Cellphone**. The set, which costs $350, consisted of a fraudulent lawful permanent resident card and Social Security card.



June 6, 2024 purchased documents

12.     On August 7, 2024, the second controlled purchase of fraudulent documents from Norma AYALA was completed. The CI ordered the documents by contacting AYALA at the **Subject Cellphone**. A HSI CI paid her $350 in exchange for another set of fraudulent documents, which consisted of a fraudulent lawful permanent resident card and Social Security card.



August 7, 2024 purchased documents

13.     On August 14, 2024, at approximately 10:53 am (EST), I obtained and served an order for a pen register/trap and trace for WhatsApp, for the **Subject Cellphone**. The order (ref. 1:24-mc- 00085-SJB) was submitted by Assistant U.S. Attorney Donald Daniels and signed by the Honorable U.S. Magistrate Judge Sally J. Berens of the U.S. District Court for the Western District of Michigan.

14. On September 17, 2024, I analyzed information from the ongoing trap and trace on AYALA's WhatsApp account. I reviewed two (2) lists developed from AYALA's WhatsApp activity: WhatsApp frequent contact list and a WhatsApp report. Both reports cover the period from September 6, 2024 to September 13, 2024.

15. I processed the top ten (10) contacts that AYALA communicated with on WhatsApp. I attempted to identify the people that were identified with those phone numbers. Any identifiers were processed through multiple other databases available to HSI. I was able to possibly identify the majority of the people with whom AYALA was communicating with on WhatsApp during this small time frame.

16. From September 6, 2024, to September 10, 2024, AYALA communicated with one (1) number on eight (8) occasions. This number made up 3.3% of her WhatsApp communications during this time period. That phone number was identified as (616) 840-4063. I processed this phone number through various databases in order to identify the end user.

17. The HSI ICM case management database indicated that SA Daniel Gwyn (ret) received information in April of 2021 regarding multiple fraudulent document vendors. The information (GP18BR21GP0003 ROI 1) indicated that the document vendor was identified as 'Rigoberto' and was Guatemalan. 'Rigoberto' only communicated via WhatsApp through two (2) phone numbers: (616) 840-4063 and (248) 329-1614. In 2021, he was charging $250-$300 for fraudulent lawful permanent resident card and a fake Social Security card.

18. T-Mobile was the identified service provider for the (616) 840-4063. In 2021, SA Gwyn served a HSI subpoena on T-Mobile regarding the (616) 840-4063 number associated with 'Rigoberto'. T-Mobile responded with additional phone identifiers, detailed called records, and the following:

    a. Phone Number: (616) 840-4063

    b. Subscriber & Account Name: Rigoberto VASQUEZ

    c. Address: 610 Shamrock Street SW, Grand Rapids, MI. 49503-8103

    d. Account Number: 655797468

  19. I then determined, from multiple online sources, that his full last name is VASQUEZ-Vasquez and processed the name of Rigoberto VASQUEZ-Vasquez through multiple other investigative databases available to HSI. VASQUEZ-Vasquez was now associated with 410 Laurel Street SW in Grand Rapids, as of November 2023. VASQUEZ-Vasquez was previously associated with 610 Shamrock Street SW in Grand Rapids, which corroborated the information previously gathered by SA Gwyn.

  20. I then reviewed Facebook for any user accounts associated with Rigoberto VASQUEZ-Vasquez. One (1) account was located, which was being utilized under the username of Rigoberto VASQUEZ-Vasquez. Facebook also showed his 'Facebook friends' list, which was open for public perusal, and indicated that he was 'Facebook friends' with Norma AYALA.

  21. The account, which was open for public perusal, contained multiple purported photographs of Rigoberto VASQUEZ-Vasquez. Multiple postings indicated that he worked as a photographer/videographer. Facebook also indicated that a company called Producciones R Vasquez was associated with Rigoberto VASQUEZ-Vasquez. The company, which had its own Facebook page, purports to offer 'fotografica' (photography) and 'videografica' (videography) services in the West Michigan area. The company advertises its phone number as (616) 840-4063. The Facebook page has a link to its YouTube page, which contains videos showing Rigoberto VASQUEZ-Vasquez. The last public posting on Facebook was approximately September 7, 2025.



22. On September 23, 2024, I served a HSI subpoena on T-Mobile requesting updated records associated with the (616) 840-4063. T-Mobile subsequently responded and provided the following information:

    a. Customer Number: (616) 840-4063

    b. Customer Name: Anthony Vargas

    c. Customer Address: 610 Shamrock Street SW, Grand Rapids, MI.

23. Based on my experience and training in conducting investigations targeting fraudulent document rings, document vendors often use fictitious or misleading information in order to evade detection by law enforcement. In many instances, a document vendor will often register a cell phone in another person's name and/or address so that their illicit activities are less traceable and provides some anonymity.

24. On November 22, 2024, HSI Grand Rapids conducted the third controlled purchase of documents from Norma AYALA. The CI ordered the documents by contacting AYALA at the **Subject Cellphone**. Norma AYALA met with a HSI CI in order to exchange $350 for another set of fraudulent identification documents.



November 22, 2024 purchased documents

25. On March 27, 2025, HSI Grand Rapids conducted a fourth controlled purchase of fraudulent identification documents from Norma AYALA. The CI ordered the documents by contacting AYALA at the **Subject Cellphone**. AYALA met with the HSI CI at a pre-arranged location in Wyoming, Michigan. The CI paid AYALA with $350 in HSI funds and AYALA provided the CI with another set of fraudulent identification documents.



March 27, 2025 purchased documents

B. <u>**Indictment, Arrest, and Cell Phone Seizure**</u>:

26. On September 23, 2025, Norma AYALA was one of three defendants charged in an Indictment filed in the U.S. District Court for the Western District of Michigan. She was charged with Conspiracy to Transfer False Identification Documents, in violation of Title 18 United States Code (USC), Section 1028(f) and Transfer of False Identification Documents in violation of Title 18 USC, Section 1028(a)(2), as well as alien reentry in violation of 8 U.S.C. §1326(a).

27.     On September 30, 2025, Norma AYALA was located and arrested in Grand Rapids, Michigan by members of the U.S. Marshals Task Force. The arrest was predicated on an outstanding arrest warrant issued out of the U.S. District Court for the Western District of Michigan (ref. 1:25-cr-136). AYALA was in possession of the **Subject Cellphone**, which was seized and placed inside of a faraday bag for evidentiary protection. I took possession of the **Subject Cellphone** on that same day, and it was secured and lodged into HSI evidence.

### SPECIFICS OF SEIZING AND SEARCHING ELECTRONIC DEVICES

28.     Based upon my training and experience in the forensic examination of computers, smartphones, and related peripherals, and my conversations with forensic examiners, I know:

   a. Searching computer systems is a highly technical process which requires specific expertise and specialized equipment. It may also be necessary to consult with computer personnel who have specific expertise in the type of computer, software application or operating system that is being searched.

   b. Computer files or remnants of such files can be recovered months or even years after they have been downloaded, deleted, or viewed. Even when such files have been deleted, they can be recovered months or years later using readily available forensic tools.

   c. Searching computer systems is a highly technical process which requires specific expertise and specialized equipment. There are so many types of computer hardware and software in use today that it is impossible to bring to the search site all of the necessary technical manuals and specialized equipment necessary to conduct a thorough search. In addition, it may also be necessary to consult with computer personnel who have specific expertise in the type of computer, software application or operating system that is being searched.

   d. Searching computer systems requires the use of precise, scientific procedures which are designed to maintain the integrity of the evidence and to recover "hidden," erased, compressed, encrypted or password protected data. Computer hardware and storage devices may contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed. Since computer data is particularly vulnerable to inadvertent or intentional modification or destruction, a controlled environment, such as a law enforcement laboratory, is essential to conducting a complete and accurate analysis of the equipment and storage

       devices from which the data will be extracted.

   e. Computer users can attempt to conceal data within computer equipment and storage devices through a number of methods, including the use of innocuous or misleading filenames and extensions. For example, files with the extension ".jpg" often are image files; however, a user can easily change the extension to ".txt" to conceal the image and make it appear that the file contains text. Computer users can also attempt to conceal data by using encryption, which means that a password or device is necessary to decrypt the data into readable form. In addition, computer users can conceal data within another seemingly unrelated and innocuous file in a process called "steganography." For example, by using steganography a computer user can conceal text in an image file which cannot be viewed when the image file is opened. Therefore, a substantial amount of time is necessary to extract and sort through data that is concealed or encrypted to determine whether it is evidence, contraband, or instrumentalities of a crime.

   f. Computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive, deleted, or viewed via the Internet. Electronic files downloaded to a hard drive can be stored for years at little to no cost. Even when such files have been deleted, they can be recovered months or years later using readily available forensic tools. When a person "deletes" a file on a home computer, the data contained in the file does not actually disappear; rather, that data remains on the hard drive until it is overwritten by new data. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space – that is, in space on the hard drive that is not allocated to an active file or that is unused after a file has been allocated to a set block of storage space – for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file. Similarly, files that have been viewed via the Internet are automatically downloaded into a temporary Internet directory or cache. The browser typically maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages. Thus, the ability to retrieve residue of an electronic file from a hard drive depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and computer habits.

29. In light of these concerns, I request the Court's permission to search, copy, and image the listed devices that are believed to contain evidence described in the warrant, and to

conduct a forensic examination for the evidence, fruits, and instrumentalities of violations of the **Subject Offenses**.

### REQUEST FOR AUTHORIZATION TO UNLOCK DEVICES

30. Based on my knowledge and experience, and information provided to me by others, I know that certain electronic devices may be locked and/or unlocked by personal identification numbers ("PIN"), gestures or motions, and/or with biometric features, such as thumb and fingerprint recognition (collectively, "fingerprint ID") and/or facial recognition ("facial ID").

31. If a user enables the fingerprint ID unlock feature on a device, he or she can register several fingerprints that can be used to unlock that device. The user can then use any of the registered fingerprints to unlock the device by pressing the relevant finger(s) to the device's sensor, which typically is found on the front of the device. In my training and experience, users of devices that offer fingerprint ID or facial ID often enable it because it is considered to be a more convenient way to unlock the device than by entering a numeric or alphanumeric passcode or password, as well as a more secure way to protect the device's contents. This is particularly true when the user(s) of the device are engaged in criminal activities and thus have a heightened concern about securing the contents of the device.

32. In some circumstances, a fingerprint or face cannot be used to unlock a device, and a passcode or password must be used instead. Depending on the configuration of the security settings on the phone, the opportunity to unlock the device via fingerprint ID or facial ID exists only for a short time. Fingerprint ID and facial ID also may not unlock the device if (1) the device has been turned off or restarted; (2) the device has received a remote lock command; and (3) several unsuccessful attempts to unlock the device are made.

33. The passcode or password that would unlock the device(s) is not known to law

enforcement. Thus, it will likely be necessary to press the finger(s) of the user(s) or present the face of the user(s) of the device(s) found during the search to the device's fingerprint ID or facial ID sensor in an attempt to unlock the device for the purpose of executing the search authorized by this warrant. Attempting to unlock the relevant device(s) via fingerprint ID or facial ID is necessary because the government may not otherwise be able to access the data contained on those devices for the purpose of executing the search authorized by this warrant.

34. Although I do not know which of a given user's 10 fingerprints is capable of unlocking a particular device, based on my training and experience I know that it is common for a user to unlock a device via the fingerprints on thumbs or index fingers. In the event that law enforcement is unable to unlock the device(s), this will result in the device requiring the entry of a password or passcode before it can be unlocked.

35. Norma AYALA is currently incarcerated in the Newaygo County Jail while awaiting trial. Therefore, she will be available to provide biometric information if authorized by the court.

36. Based on the foregoing, I request that the Court authorize law enforcement to press the fingers (including thumbs) of Norma AYALA to the fingerprint ID sensor or to present their faces to the facial ID sensor of any seized device(s) to attempt to unlock any devices seized under this warrant in order to search their contents as authorized by this warrant.

## CONCLUSION

37. Based on the above information, there probable cause to believe that evidence, contraband, and fruits of, and other items related to the conspiracy to transfer and transfer of false identification documents  in violation of 18 U.S.C. §§ 1028(f) and 1028(a)(2) (the **Subject Offenses**), are present on the item described in Attachment A.  Accordingly, I respectfully request

that this Court issue a search warrant for the listed item, more particularly described in Attachment A, authorizing the seizure of the items described in Attachment B, which constitute evidence, contraband, fruits, and other items related to the conspiracy to transfer false United States identification documents and the transfer of such documents in violation of 18 U.S.C. §§ 1028(f) and 1028(a)(2).